OPINION
{¶ 1} Defendant-appellant Charles J. Lee appeals from his conviction and sentence for Assault. Lee contends that the State failed to prove beyond reasonable doubt that he knowingly caused physical harm to the victim — the mother of the mother of his child. We have reviewed the evidence in the record, and we conclude that when the evidence is viewed in a light most favorable to the State, as the prevailing party, a reasonable mind could conclude that Lee was aware that his conduct would probably cause injury to the victim, which is the requirement for the culpable mental state of acting "knowingly." Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 2} In early March, 2005, Lee, his girlfriend, Tiffany Spencer, and their infant son Anthony were living with Tiffany's uncle. As a result of a purely verbal argument between Lee and Tiffany's uncle, Lee decided to go to his brother's residence, taking Anthony with him. Tiffany did not want Lee to take Anthony. The two quarreled for perhaps a half an hour, and Tiffany called her mother, Mary Spencer.
 {¶ 3} Mary Spencer, understanding that Lee was threatening to take Anthony, her grandchild, against Tiffany's wishes, decided to come and support Tiffany. Mary Spencer lived nearby, so she was able to arrive from five to ten minutes after the phone call.
 {¶ 4} A physical altercation ensued, with Lee on one side, against Tiffany and her mother, on the other. At one point, Lee was attempting to get Anthony's car seat past Tiffany and her mother, with both women trying to stop him, their hands on the handle of the car seat. Lee was trying to get them to let go of the car seat. During this struggle, Tiffany's sister, Cherokee Kinser, arrived. Lee decided to leave without Anthony, and exited through a window. He was later arrested and charged with one count of Domestic Violence against Tiffany, one count of Assault against Tiffany, and one count of Assault against Tiffany's mother, Mary Spencer.
 {¶ 5} Following a bench trial, Lee was acquitted of the two counts involving Tiffany, but was convicted of the count of Assault involving Mary Spencer. He was sentenced accordingly. From his conviction and sentence, Lee appeals.
 {¶ 6} As a preliminary matter, we note that the trial transcript in our record is missing page 19. We conclude, however, that this is of no consequence. Page 19 of the transcript was during the direct testimony of Tiffany Spencer. We conclude that the testimony of Mary Spencer, the entirety of which is transcribed, is sufficient to adjudicate Lee's sole assignment of error.
 II {¶ 7} Lee's sole assignment of error is as follows:
 {¶ 8} "THE TRIAL COURT ERRED IN FINDING CHARLES J. LEE GUILTY OF ASSAULT ON MARY SPENCER BECAUSE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT MR. LEE KNOWINGLY CAUSED MS. SPENCER PHYSICAL HARM."
 {¶ 9} Lee contends that there was a failure of proof on the element that he knowingly caused Mary Spencer physical harm. In determining whether the evidence in the record supports the judgment of the trial court, a reviewing court must review the evidence in a light most favorable to the prevailing party.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
 {¶ 10} Lee was charged with Assault, in violation of R.C.2903.13(A), which provides as follows: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." "`Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C.2901.22(B). In the absence of an admission by a defendant that is aware that his conduct will probably cause a certain result, the proof of this fact, being the defendant's state of mind, can only be proved inferentially, by circumstantial evidence.
 {¶ 11} Lee, Tiffany Spencer, and Mary Spencer all testified. Lee's testimony and Mary Spencer's testimony conflicted in some respects, but there is nothing inherently incredible in Mary Spencer's testimony, so that the trial court was entitled to find her testimony credible, and choose to believe it.
 {¶ 12} Based upon the following testimony of Mary Spencer, we concluded that there is evidence in the record that, when viewed in a light most favorable to the State, permits the conclusion that Lee caused Mary Spencer physical harm, and was aware that his conduct would probably cause her physical harm:
 {¶ 13} "Q. And what happens after you hang up the phone [after calling and talking to Cherokee Kinser]?
 {¶ 14} "A. By that time I was in the kitchen, at the back door, waiting on either the police [whom she called before calling Kinser] to show up or my daughter. I couldn't handle no more. Then here come Joey [Lee] and Tiffany screaming. Joey had the baby in this stroller and his car seat. I got one side of his car seat handle and Tiffany had the other side. He was arguing. At that time (inaudible) or more or less to take a baby to.
 {¶ 15} "Q. OK. What happened then?
 {¶ 16} "A. Then the first time I just ended up back into the wall.
 {¶ 17} "Q. How did you end up back into the wall?
 {¶ 18} "A. I guess when he was trying to get my hands loose from the car seat and he pushed me back into the wall on my left side.
 {¶ 19} "Q. And what happened then?
 {¶ 20} "A. And the second time I can't say if he did it with his fist or his hand. I'm not really for sure and I will not swear to either one. He got me right in the chest. There was a bruise right on my chest that — the pictures were took in here the next morning.
 {¶ 21} "Q. OK. Was there any other times that he pushed you?
 {¶ 22} "A. The third time — at the same time the third time happened and he threw me back into the wall is when my oldest daughter [Kinser] walked in.
 {¶ 23} "Q. So he pushed you and threw you into the wall?
 {¶ 24} "THE DEFENSE: Objection he's characterizing.
 {¶ 25} "THE COURT: Sustained.
 {¶ 26} "Q. The third time what did he do to you?
 {¶ 27} "A. He just swung me back into the wall.
 {¶ 28} "Q. I apologize. (Inaudible) when Joey pushed you back the first time did that hurt?
 {¶ 29} "A. My left shoulder yeah.
 {¶ 30} "Q. Your left shoulder? The second time that he [sic] indicated that he pushed you in the chest did that hurt?
 {¶ 31} "A. Yeah that's when it caught my air and I started having problems breathing.
 {¶ 32} "Q. Were you wearing — I don't know
 {¶ 33} "A. Oxygen?
 {¶ 34} "Q. Were you wearing oxygen?
 {¶ 35} "A. No I didn't have it on at the time.
 {¶ 36} "Q. Had you been around Joey with your oxygen in the past?
 {¶ 37} "A. Yes.
 {¶ 38} "Q. The third time that you were swung into the door did that hurt?
 {¶ 39} "A. Just on the left side. All three episodes happened towards the left side because of how we were standing. It was — my left side was the one that went first not the right. Tiffany was more or less on the right side. He had a hold of her arms. It was like he was switching back and forth. He had a hold of Tiffany's arm trying to get her loose and then he was trying to get me loose because neither one of us would let loose of the handle of the car seat.
 {¶ 40} "Q. May I approach the witness Your Honor?
 {¶ 41} "THE COURT: Yes you may.
 {¶ 42} "Q. I'm going to show you what's been marked as State's Exhibit `2' for purposes of identification. Can you tell me what this is that I'm handing you?
 {¶ 43} "A. That's the (inaudible) —
 {¶ 44} "Q. What is this that I'm handing you?
 {¶ 45} "A. It's my (inaudible) of my chest.
 {¶ 46} "Q. This is a picture right?
 {¶ 47} "A. Yes.
 {¶ 48} "Q. What is this picture here showing?
 {¶ 49} "A. A bruise that he — a mark that he put on the left side of my breast.
 {¶ 50} "Q. Is this — when was this picture taken?
 {¶ 51} "A. The very next morning here at the police department.
 {¶ 52} "Q. Did a police officer take that picture?
 {¶ 53} "A. Yeah.
 {¶ 54} "Q. Is that a fair and accurate depiction of the bruise that occurred as a result of the incident that you just talked about?
 {¶ 55} "A. Yes it is.
 {¶ 56} * * *
 {¶ 57} "Q. When you say — you used a couple of different terms. You got pushed. You got swung around and things like that. You did testify that when you got pushed you can't say that he hit you with an open hand or with a fist or anything. You just got pushed?
 {¶ 58} "A. Right. I won't sit here and tell you that it was a fist because I don't recall it being a fist or open hand. I just know that I ended up with a bruise there and it was done through the episode with him.
 {¶ 59} "Q. And now this happened while you guys were struggling over the car seat/stroller combination?
 {¶ 60} "A. No.
 {¶ 61} "Q. So all three of you have a hold of it?
 {¶ 62} "A. No.
 {¶ 63} "Q. OK.
 {¶ 64} "A. I have one side of it and Tiffany had the other side. Joey had neither. His hands wasn't on it. He was trying to get our hands off of it.
 {¶ 65} "Q. So he's trying to get between you and the car seat?
 {¶ 66} "A. Right.
 {¶ 67} "Q. And that's how you got pushed?
 {¶ 68} "A. Right.
 {¶ 69} "Q. In his effort to get between you and the car seat?
 {¶ 70} "A. He was trying to get my hands loose away from it and Tiffany's so that he could leave with the baby.
 {¶ 71} "Q. OK. So he's not confronting you face to face like two people squaring off to fight?
 {¶ 72} "A. No.
 {¶ 73} "Q. And you in the process of this you get pushed back and you fall and you step back into a cabinet or a door or something?
 {¶ 74} "A. Ugh.
 {¶ 75} "Q. (Inaudible)
 {¶ 76} "A. Between a wall and a closet door. It's just my left shoulder when he would grab my arm to try and get me off of the handle it would just seem like my left shoulder went towards it and would always hit (inaudible) from the wall and the closet door.
 {¶ 77} "Q. Because that's the direction that all the bodies are moving in at the time?
 {¶ 78} "A. Yeah. And then how we were standing and stopped and how the hallway is. It's just a dinky hallway.
 {¶ 79} "Q. So you are not the only one that bumped into the wall or door. Charles probably bumped into the door or the wall?
 {¶ 80} "A. No he was standing more towards the kitchen and Tiffany was on the other side so it —
 {¶ 81} "Q. It was a very confined space?
 {¶ 82} "A. I was more the only one that got to the — that ended up at the wall because of where I was standing and holding the handle of the car seat.
 {¶ 83} "Q. So you ran into the wall because of where you were standing?
 {¶ 84} "A. I had help but —
 {¶ 85} "Q. You hit the wall because you were standing so close?
 {¶ 86} "A. Yeah."
 {¶ 87} When we view Mary Spencer's testimony in a light most favorable to the State, we conclude that the second of the three physical contacts she describes is sufficient to support Lee's Assault conviction. The first and third episodes, where Mary Spencer came into contact with the wall in the confined space, appear to be no more than incidental consequences of the struggle over the infant car seat. But the second, viewed in a light most favorable to the State, appears to have involved Lee's hitting, or shoving, Mary Spencer in the chest with either his fist or his open hand.
 {¶ 88} Even when viewing the evidence in a light most favorable to the State, we tend to agree with Lee that the evidence is insufficient to prove, beyond reasonable doubt, that he intended to harm Mary Spencer. It appears more likely that he was just trying to separate her, and her daughter, from their hold on the car seat. But the State is not required to prove that Lee intended to harm Mary Spencer; it is only required to prove that in hitting or shoving her in the chest, he knew that he would probably cause her physical harm. When the evidence is viewed in a light most favorable to the State, we conclude that this is a reasonable inference.
 {¶ 89} The "physical harm" element of Assault requires nowhere near the degree of harm required for "serious physical harm," as defined in R.C. 2901.01(A)(5). Where a knife has been held so tightly, and with such pressure, that a red indentation remains after the knife has been removed, the victim has suffered "physical harm." State v. Goble (1982), 5 Ohio App.3d 197, 5 Ohio B. 458, 450 N.E.2d 722. We have, of course, examined State's Exhibit 2, the photograph taken of Mary Spencer's chest the day following the alleged Assault. There is a red mark visible on the left side of her chest. It appears fairly minor, but it is visible, the photograph was taken the day following the altercation, and even a minor injury satisfies the definition of "physical harm" set forth in R.C. 2901.01(A)(3).
 {¶ 90} We conclude that Mary Spencer's testimony, when viewed in a light most favorable to the State, supports a finding that Lee caused her physical harm, and that in hitting or pushing her in the chest, he knew that his act would probably cause her physical harm. Therefore, we cannot say that there is insufficient evidence in the record to support Lee's conviction for Assault — i.e., that there is a failure in the State's proof.
 {¶ 91} Lee's sole assignment of error is overruled.
 III {¶ 92} Lee's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Donovan, JJ., concur.